ALICE R. ADAMS, SARAH DeLECROIX REED AND JEANETTE ARTHUR, PLAINTIFFS-RESPONDENTS, v. CAMDEN SAFE DEPOSIT AND TRUST COMPANY, DEFENDANT-APPELLANT.

Submitted May 3, 1938—Decided November 16, 1938.

390

Before BROGAN, CHIEF JUSTICE, and Justices BODINE and HEHER.

For the appellant, *Walter R. Carroll.*

For the respondents, *Carl Kisselman.*

The opinion of the court was delivered by

HEHER, J. The judicial rulings assigned for error are (a) the denial of defendant's motion to strike out the complaint on the ground that it does not disclose a cause of action, and (b) the striking out of defendant's answer, on plaintiffs' motion, and the entry of summary judgment in favor of plaintiffs, severally.

The motion to strike out the answer was grounded in the claim that it was sham and frivolous. While the order is not specific in this regard, the memorandum filed in the court below indicates that the answer was deemed to be frivolous.

This is the case exhibited by the complaint: Elizabeth Clement died testate on March 12th, 1933. Her will devised and bequeathed the residue of her estate to defendant, "upon trust to hold and invest the same and to pay the net income" to her sister, Sarah C. Githens, during her life; and certain general legacies were given to plaintiffs, severally, upon the termination of the life estate. The life *cestui* died on January 22d, 1935. It is alleged that on or about October 29th, 1934, defendant, "as trustee, received the sum of $7,691.79, * * * more than sufficient to pay in full all of the legacies provided for" in the will; and the pleader proceeds upon the hypothesis that, while the "sum" in question was "received" by defendant, "as trustee," it is liable to the legatees in an action at law in its separate corporate capacity, as distinguished from its fiduciary character. The theory expounded by counsel on the brief is that defendant's "duty as a trustee was a naked one," and that it had received, in its corporate capacity, moneys which in equity and good conscience it ought to turn over to plaintiffs.

The answer denies both jurisdiction and liability in defendant's corporate capacity. It alleges, *inter alia,* that defendant qualified as the designated executor of the will, probated on April 5th, 1933; that the deceased, at the time of her death,

was possessed of certain mortgage securities and choses in action, including a deposit with a closed national bank; that, after due administration of the estate, defendant filed its final account as such executor, showing the residuary estate to consist of $7,426.22 of *corpus* and $303.32 of income, and such proceedings were had thereon that on September 28th, 1934, a decree of allowance as presented was entered in the Camden County Orphans' Court; that, with the exception of cash amounting to $256.96 and household goods and jewelry inventoried at $37.75, the residuary estate then consisted of unconverted securities and the bank deposit at the inventory value; that, following the allowance of the account, defendant, as executor, "transferred and delivered the foregoing assets and cash" to itself as testamentary trustee, and that in such latter capacity it undertook the "burden of administering the trust created and established" by the will; that defendant "has been unable to reduce said assets to cash and to find a reasonable market for the same except at a tremendous sacrifice in value;" that, "as trustee," it "is under no duty, liability or obligation to the plaintiffs  *  *  *  other than to file its account as such trustee in the Orphans Court of Camden County and to turn over and deliver" the said unconverted trust assets "to the legatees entitled thereto  *  *  *  in kind, if said legatees can agree upon a distribution  *  *  * among themselves, or, as an alternative to such distribution in kind, to reduce said assets to cash by sale thereof in open market for the best and highest price obtainable, and to distribute the proceeds of such sale or sales among said legatees according to their respective rights and interests;" that defendant has not been cited to file its account as testamentary trustee, and that plaintiffs "have at all times, prior to the institution of this" action, "acquiesced in the retention and holding of said assets by said trustee, well knowing that said assets were being held by said trustee in the hope that a market could be found therefor which would admit of a sale reasonably fair and advantageous to said legatees;" and that, in its "separate corporate capacity," defendant "does not own,

or have, or claim to own or have said assets, or any of them." These allegations were verified by affidavit.

Plaintiffs established, likewise by affidavit, that on October 29th, 1934, defendant, as testamentary trustee, executed and delivered to itself, as executor of the will, "a receipt and release," wherein it acknowledged receipt as trustee of "the sum of $7,691.79, being the balance of principal in the hands of said executor of $7,426.22, less the value of chattels held by said executor, appraised at $37.75, plus the balance of income amounting to $303.32, which sums were found to be the balances in the hands of said executor in and by an order of the Camden County Orphans Court dated September 28th, 1934," and further, that there had been "paid over" to it as trustee "the sum of $7,691.79, in full payment and satisfaction" of the trust estate so created by the will. But the proceedings in the Orphans Court on defendant's final account as executor, of which plaintiffs had due notice, established that, at the time of the decree of allowance, the mortgage securities and choses in action adverted to had not been converted. In the schedule listing the investments, annexed to the account, the nature of the *corpus* of the estate was set out in detail.

The Common Pleas judge ruled that the words "the sum of $7,691.79 can only refer to money or cash." Invoking the parol evidence rule, he held that defendant could not "vary the terms of the release already on file in the surrogate's office, by offering proof that it was not money that passed" thereunder, "but securities." On the theory that the release "was executed for the benefit of the wards," he observed that to permit the "fiduciary to come in and offer evidence" to the contrary would controvert "public policy" and subvert "the interest of the helpless wards."

*First:* Respondents move *in limine* to dismiss the appeal on the ground that appellant, by bill in equity still pending, seeks to enjoin the "collection of the judgment," and has thereby released "any alleged errors in the action at law," and "has made an election of the forum, barring its right to appeal herein." We find the point to be devoid of substance.

These are the pertinent facts: The bill was filed on December 21st, 1936, before the entry of the judgment herein. It prayed the reformation of the release to accord with the true situation, and an injunction against the entry of judgment in this action. An *ad interim* restraint was awarded. On March 15th, 1937, respondents applied to the chancellor for a modification of the restraint to permit the entry of judgment "in accordance with the verdict of the court who heard the matter," since the term of office of the sitting judge would shortly expire, and, in any event, the effect of the *ad interim* restraint being "to extend the time for taking an appeal," judgment should be entered so that the time for taking an appeal would begin to run. It was the insistence of respondents' counsel that, by the course thus proposed, appellant could not "be harmed." The learned vice-chancellor, over the objection of appellant, modified the restraint to permit the entry of judgment, but stayed proceedings thereon. It is indicated that the bill in equity has gone to final hearing, but that the issue is still undetermined.

The suit in equity is not rested upon a claimed invalidity or right of revision of the judgment at law. The pleaded equity is independent of the judgment. It is grounded in matter—however misconceived—that has not been, and could not be, litigated in this proceeding at law, *i. e.,* mistake necessitating reformation of the written memorial of the transaction adverted to. In this situation, the invocation of such equitable jurisdiction does not constitute a release and waiver of errors in the judgment at law. The doctrine of election of remedies afforded by two forums of concurrent jurisdiction is not applicable. Compare *Henwood* v. *Jarvis and Schafer,* 27 *N. J. Eq.* 247, 256; *Kelsey* v. *Agricultural Insurance Co.,* 78 *Id.* 378; *Parker* v. *The Judges of the Circuit Court of Maryland,* 25 *U. S.* 561; 6 *L. Ed.* 729; *Lockwood* v. *Mills,* 3 *Ohio* 20.

The essence of the doctrine of election of remedies is the conscious choice, with full knowledge of the facts, of one of two or more inconsistent remedies. *Tremarco* v. *Tremarco,* 117 *N. J. Eq.* 50; *Titus* v. *Phillips,* 18 *Id.* 541; *Blum Build-*

*ing Co.* v. *Ingersoll,* 99 *Id.* 563; *affirmed,* 101 *Id.* 291. It stems from the principle, rooted in reason and justice, that a party, in seeking legal redress, shall not be at liberty to take irreconcilable and repugnant positions. While the consequences are the same, it is not essential that there be an estoppel *in pais,* for it is not required that the adversary party act upon the election to his detriment, or that a failure to abide by it would result in disadvantage. It is rather an intentional waiver of all remedies but the one so chosen.

It is a corollary of the foregoing that, to make the election conclusive, there must in fact be two inconsistent remedies available to the party seeking enforcement of the claimed right. Neither the mistaken assertion of a right that does not exist nor the unsuccessful invocation of an unavailable remedy operates as a definitive election. Nor is the principle applicable to bar concurrent and consistent remedies. *Kelsey* v. *Agricultural Insurance Co., supra.* And so the institution of a suit to reform an instrument does not preclude a subsequent action thereon. Likewise, a vendee's action, later discontinued, to recover damages for the non-performance of the contract does not preclude a suit for specific performance. Nor does a discontinued vendor's action to recover the balance of the contract price serve to bar his subsequent suit for specific performance. In each instance, the original action is an affirmance and not a repudiation of the contract. *Van Buren* v. *Fine,* 101 *N. J. Eq.* 373; *affirmed,* 103 *Id.* 327. This principle was applied in *Blum Building Co.* v. *Ingersoll, supra.* And one who brought an unsuccessful suit to cancel a contract for the exchange of lands and a deed was permitted to introduce an amendment praying affirmance of the contract and monetary relief, on the theory that such reliefs "are not so inconsistent" as to render inapplicable the principle of alternative remedies. *Friederichsen* v. *Renard,* 247 *U. S.* 207; 38 *S. Ct.* 450; 62 *L. Ed.* 1075. It is also a doctrine embedded in our jurisprudence that a defendant to an action at law is not, by pleading therein, precluded from equitable relief in matters solely of equitable cognizance, and therefore not available as a defense at law. *McMichael* v. *Barefoot,* 85 *N. J. Eq.* 139; *Simon* v. *Townsend,* 27 *Id.* 302.

The case relied upon by respondents, *Leigh* v. *Kewanee Manufacturing Co.,* 147 *Fed. Rep.* 693; *cert. den.,* 203 *U. S.* 595; 51 *L. Ed.* 332, is not in point. While it is dissimilar in other substantial particulars, it suffices to point out that the injunction in equity was expressly conditioned upon the giving of a bond by complainant for the payment of the judgment at law, should the injunction be dissolved. It was within the province of equity to so condition the issuance of the injunctive process; and compliance therewith constituted a waiver and release of all errors in the judgment.

In *Henwood* v. *Jarvis and Schafer, supra,* the contention was made that (at *p.* 256), "where one comes into equity for relief against proceedings at law, and seeks on equitable grounds to enjoin such proceedings, the relief will be granted only on condition of his first confessing judgment at law." Chancellor Runyon said : "Such terms are sometimes imposed in granting injunctions to stay proceedings at law, where the complainant, having no defense at law, applies for relief on the ground of equity alone. In such cases they are imposed in order that the plaintiff in the action at law may not be delayed in obtaining judgment, inasmuch as the defendant has no defense at law. *Turner* v. *B. Miss. Union,* 5 *McLean* 349, 350. * * * The rule in England is thus laid down by Kerr: 'The terms on which an injunction is granted are in each case a question for the discretion of the court, but the general principle upon which the court proceeds is, to put the party applying upon such terms as will enable the court to do justice to the party restrained in the event of his failing to make out his case at the hearing.' *Kerr on Inj.* 18. But it is difficult to discover a good reason for compelling a party, as terms on which alone the protection of equity will be afforded him, to abandon what he may be advised is a good defense at law. * * * Where the complainant has a distinct ground of equitable relief, aside from his defense at law, he will not be obliged to abandon his legal defense by confessing judgment before equity will enjoin the suit at law."

Nor do we think that section 64 of the Chancery act of 1902 (*Comp. Stat.* 1910,.*p.* 434; *R. S.* 1937, 2:29-73) ope-

rates to bar the prosecution of the instant appeal. As stated, the injunction issued before the entry of the judgment. Moreover, we discern no legislative purpose, express or fairly to be implied, to impart to an application for such injunctive relief the quality of a release of errors in the judgment at law, and thereby to deprive the injured party of the right of correction and revision in the appellate court—the final step in the cause.

The doctrine of election of remedies, considered by eminent authority as "a harsh, and now largely obsolete rule," is one to be strictly confined within its reason and spirit. *Friederichsen* v. *Renard, supra.* To say that a party who, prior to the entry of judgment against him, seeks in equity reformation of the instrument upon which the adversary party founds his claim to accord with the true undertsanding of the parties, and thus to prevent unconscionable use of the untrue memorial in the action at law, thereby releases, regardless of his intention, all errors in the judgment which may later be entered against him at law, is to carry the doctrine of election to an unreasonable and illogical extreme that frustrates rather than advances essential justice.

There is no estoppel against the prosecution of this appeal. On the contrary, judgment was entered after the allowance of the *ad interim* restraint, upon the application of respondents, and over the objection of appellant, under circumstances unmistakably indicating a purpose, common to all parties, to preserve the right of appeal therefrom.

We are thus brought to a consideration of the errors assigned for reversal.

*Second:* This was not a naked or passive trust. The trustee was under a duty to invest the *corpus* and turn over the income to the life *cestui,* and, upon her death, to pay the general legacies. It was incumbent upon it, in the administration of the trust, to use only such care, skill, diligence and caution as a man of ordinary prudence would practice in like matters of his own, and to render an account of its stewardship and respond to such liability as arose therefrom: and if, notwithstanding the performance of the duty so

imposed, the trustee is unable, for lack of convertible assets, to pay the general legacies, it is not liable therefor in its corporate capacity. *In re Brueck, 124 N. J. Eq.* 62.

The enforcement of such express private trusts is within the general exclusive jurisdiction of equity as it came to us from the English Chancery. In the course of time, this jurisdiction was extended to the relation between executors and administrators, on the one hand, and legatees, distributees, and creditors, on the other, because it has "so many of the features and incidents of an express active trust;" and that jurisdiction still subsists, although by force of statutory provisions it is no longer exclusive. And so, no action lay at common law to recover a legacy, unless it was a specific legacy of goods, and the executor had assented to it so that the property therein vested in the legatee, although it has been suggested that an express promise by the legal representative to pay a general legacy or distributive share also falls into this category. The procedure at law furnished no means by which the rights and claims of all legatees, distributees and creditors could be ascertained and ratably adjusted, and the assets proportionately distributed among those having demands of an equal degree as to priority, and the estate finally settled. *Salter* v. *Williamson,* 2 *N. J. Eq.* 480; *Frey* v. *Demarest,* 16 *Id.* 236; *Hunt* v. *Mayberry,* 29 *N. J. L.* 403; *Hedges* v. *Norris,* 32 *N. J. Eq.* 192; *Rutherford* v. *Alyea,* 54 *Id.* 411; *Filley* v. *Van Dyke,* 75 *Id.* 571; *Deaton* v. *Dorsey,* 78 *N. J. L.* 229; *In re Heinze,* 93 *N. J. Eq.* 321; *affirmed, Id.* 672; *Pom. Eq. Jur.* (4th ed.) §§ 156, 349, 1127, 1152.

The act concerning legacies (*Comp. Stat.* 1910, *p.* 3087; *R. S.* 1937, 3:26-26 *et seq.*) is not applicable. It confers upon the Supreme Court and Circuit Courts jurisdiction to entertain an action of debt, action on the case, or detinue, against an executor or administrator *cum testamento annexo,* for a legacy or bequest of money or personal goods or chattels made by will. And it is to be also observed that there can be no recovery in such an action unless it shall appear that "there are sufficient assets in the hands of such executor or administrator to satisfy the debts of the testator, and the

legacy or legacies bequeathed," and that in case the overplus, after the payment of the debts, shall not be sufficient to discharge all the legacies, "an abatement shall be made in proportion to the legacies so given."

Thus it is that an action at law as for money had and received does not lie in favor of the *cestui que trust* against his trustee for the recovery of his interest in the trust fund, unless, perchance, the amount due has been fixed on a final accounting, and there remains nothing for the trustee to do but to make payment thereof. And, even in the latter event, there would seem to be, in the absence of an enabling statute, serious doubt of the propriety of the common law action for money had and received. *Sergeant and Harris* v. *Stryker,* 16 *N. J. L.* 464.

It is a mere truism to say that the defendant is not liable in its separate corporate capacity, so as to subject its corporate assets to the payment of these legacies, unless there has been a failure of fiduciary duty; and it is then liable only to the extent of the consequent losses. And this liability for failure of duty is not enforceable at law in the first instance. Nor is that the gravamen of the complaint here.

And we do not entertain the view that, in the absence of the elements of estoppel *in pais,* the parol evidence rule is applicable in a case such as this. As regards the consideration, the instrument is in form and substance a receipt. The statement of the consideration was obviously intended to be a mere "written acknowledgment of the distinct act of payment," inserted for convenience, and not designed to be an exclusive memorial; and it is well settled that in such cases parol evidence is admissible to show the true consideration. *Dieckmann* v. *Walser,* 114 *N. J. Eq.* 382; *Fire Insurance Association* v. *Wickam,* 141 *U. S.* 564; *Kentucky and Indiana Cement Co.* v. *Cleveland,* 30 *N. E. Rep.* 802; *Barber Asphalt Paving Co.* v. *Mullen,* 107 *Id.* 978; *Cole* v. *Taylor,* 22 *N. J. L.* 59; *Silvers* v. *Potter,* 48 *N. J. Eq.* 539; *Bolles* v. *Beach,* 22 *N. J. L.* 680, 681; *Voight* v. *Dowe,* 74 *N. J. Eq.* 560; *Hattersley* v. *Bissett,* 51 *Id.* 597, 598; *Speer* v. *Speer,* 14 *Id.* 240; *Herbert* v. *Scofield,* 9 *Id.* 492; *Wigmore*

*on Evidence* (*2d ed.*) §§ 2432, 2433; *Williston on Contracts* (*rev. ed.*) § 115A, 632; *A. L. I. Contracts*, §§ 82, 244.

A receipt, though evidence against the person who made it and those claiming under him, is not conclusive evidence, except as to the person who may have been induced by it to alter his condition; and it therefore may be contradicted or explained. *Graves* v. *Key, 3 B. & Ad.* 313. While in the individual case care must be taken to guard against the introduction of parol evidence that, in the guise of proof of the actual consideration, tends to vary the terms of the contract, the general rule, plainly applicable here, is that "a recital of consideration received is, like other admissions, disputable so far as concerns the thing actually received; but that, so far as the terms of a contractual act are involved, the writing must control, whether it uses the term 'consideration' or not." *Wigmore on Evidence* (*2d ed.*) § 2433.

There is no indication of a purpose to make this document the sole memorial of the act, so as to exclude the final account and the proceedings thereon. Its primary office was to effectuate the decree allowing the account: and the exclusion of all reference to the underlying proceeding in giving effect to it would do violence to the evident intent and so constitute a plain perversion of justice.

The integration of an act so as to warrant the invocation of the parol evidence rule depends upon the intent of the parties; but that inquiry is circumscribed by the inherent limitations of this substantive rule of law. For discussions of the question, see *Wigmore on Evidence* (*2d ed.*) §§ 2427, 2429, 2430, 2431, 2442, and *Williston on Contracts* (*rev. ed.*) §§ 632, 633. The general rule prevailing in this state is that enunciated in *Naumberg* v. *Young,* 44 *N. J. L.* 331. See *Downs* v. *Jersey Central Power and Light Co.,* 117 *N. J. Eq.* 138.

It is to be noted that the trustee was enjoined by the will to invest the *corpus* and pay the income to the life *cestui.* Even though the *corpus* so turned over consisted of money, the trustee was under a duty to invest it; and whether the continuance of the investments made by the testatrix satisfied

the applicable standard of duty is not a question for solution in this action at law.

It is therefore unnecessary to determine whether the words "the sum of," as used in the instrument, are fairly susceptible of more than one meaning, so as to call for the consideration of the attendant circumstances in the ascertainment of their true meaning.

It suffices to say in conclusion that the elements of estoppel are lacking. See *Central Railroad Co.* v. *MacCartney,* 68 *N. J. L.* 165; *Demarest* v. *Hopper,* 22 *Id.* 599; *Ruckelshaus* v. *Oehme,* 48 *N. J. Eq.* 436; *affirmed, sub nom. Borcherling* v. *Ruckelshaus,* 49 *Id.* 340; *LaRosa* v. *Nichols,* 92 *N. J. L.* 375.

The judgment is accordingly reversed, with costs; and the cause is remanded with direction to strike out the complaint and enter a summary judgment for defendant.