RHODE ISLAND HOSPITAL TRUST COMPANY *vs.* THE RHODE ISLAND COVERING COMPANY, INC.

JUNE 27, 1962.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

ROBERTS, J.  This is a motion for the payment of proceeds of security brought by a secured creditor in a statutory proceeding for dissolution of a domestic corporation. The motion was heard by a justice of the superior court, who thereupon entered a decree directing the coreceivers to pay to the moving creditor certain funds that had been received by them in the course of their administration of the receivership. From the decree certain unsecured creditors of the corporation have taken this appeal.

It appears from the record that the Rhode Island Hospital Trust Company, hereinafter referred to as the bank, had made two loans to The Rhode Island Covering Company, Inc., hereinafter referred to as respondent. These loans were evidenced by two promissory notes, one dated November 18, 1959 in the amount of $194,000 and the other dated February 2, 1961 in the amount of $24,400. The note dated November 18, 1959 was secured by a real estate mortgage of the same date covering the premises of respondent located on South Main street in Providence and by the endorsement and pledge of an officer of the respondent com-

pany. Both notes were also secured by an assignment of respondent's accounts receivable dated February 2, 1961.

It is not disputed that respondent was having financial difficulties and because of this the bank on February 8 instituted the instant receivership proceeding by filing a petition pursuant to the provisions of G. L. 1956, §7-5-17. The petition contains the conventional averments, including that of insolvency of respondent, and prays for the appointment of a receiver vested with power to operate the business, to take possession of the assets, to sell the same and convert all assets into cash and "distribute the same to creditors or shareholders as the Court may direct * * *." It also prays for a dissolution of respondent. In the petition the bank describes itself as "a creditor of the respondent corporation being owed by said respondent a sum in excess of $170,000." The bank further averred that the petition "is made in good faith to protect all creditors * * *." It further appears from the record that on February 8 a decree was entered appointing a temporary receiver and that on February 24 a further decree was entered appointing as the permanent receivers Dana M. Swan, Esq. and Bernard R. Pollock, Esq.

Thereafter, on February 27, 1961, the bank filed its proof of claim as required by rule 96 of the rules of practice of the superior court. The bank specifically stated therein that respondent's indebtedness to it was in the amount of $171,034.66. The proof of claim also stated that the notes were secured by a mortgage on the South Main street property of respondent and by the endorsement and guarantee of an officer of the respondent company.

The coreceivers undertook without success to operate respondent's business and to sell it in its entirety as a going concern. They thereafter, pursuant to an instruction of the court, sold the tangible personal property at auction, the net proceeds of such sale being $31,369.99. The coreceivers also offered the mortgaged real estate for sale at the same

auction, but the property was withdrawn when the highest bid was less than the minimum selling price designated by the bank.

It further appears that on May 17, 1961 the court approved a proposed sale of the mortgaged real estate at a price of $75,000. This sale was finally concluded in September 1961, the net proceeds thereof being $64,887.41. The coreceivers then deposited the funds received from the sale of the real estate, along with moneys collected from the assigned accounts receivable, in an escrow account pursuant to the decree of May 17.

On December 5, 1961 the bank filed the instant motion for payment of the proceeds of security. After a hearing thereon the decree of January 24, 1962 was entered. The court found therein that the notes, mortgage, and assignment of accounts receivable were valid and binding obligations of respondent and constituted a valid conveyance to the bank of the security interests therein represented. The court then directed the coreceivers to pay to the bank all moneys collected from the sale of the mortgaged premises and from collection of the assigned accounts receivable contained in the escrow account.

We shall consider first the contention of the creditors that the court erred in directing the coreceivers to pay over the proceeds of the sale of the real estate and the collection of the accounts receivable pursuant to the instant motion because the bank, by petitioning for the appointment of a receiver, waived or abandoned its status as a secured creditor. The contention is twofold as we understand it. It is argued, first, that the bank by petitioning under §7-5-17 for the appointment of a receiver waived its status as a secured creditor and, second, that in any event its failure to reveal in the petition that it was a secured creditor constituted a waiver of that status. With these contentions we do not agree.

The petition brought by the bank for appointment of a receiver in the instant case was brought under the provisions of G. L. 1956, §7-5-17, which provides that when a domestic corporation, other than certain specified quasi-municipal and financial corporations, is insolvent, "the superior court may, upon the petition of any stockholder or creditor of such corporation, and upon such reasonable notice as the court may prescribe, decree a dissolution of such corporation and appoint a receiver of its estate and effects * * *."

Nothing in the statute, in our opinion, warrants a conclusion that the procedure contemplated therein could not be invoked by a secured creditor. From the language of the statute it is clear that upon the occurrence of any of the prescribed conditions precedent, including insolvency, the petition provided for therein may be made by "any stockholder or creditor." We do not perceive that this language in any manner obscures the intention of the legislature to permit any creditor, secured or unsecured, to make the petition provided for therein. It is well settled in this state that where the language of a statute is free from ambiguity and expresses a definite and sensible meaning, the meaning so expressed will be conclusively presumed to be the one intended by the legislature. *Weimar* v. *Newman,* 78 R. I. 221.

Neither do we perceive any merit in the contention that the failure of the bank to reveal in the petition that it had the status of a secured creditor amounts to a waiver of that status. There is nothing in the statute that requires a petitioning secured creditor to make such a disclosure and, that being so, in our opinion failure to do so is not conclusive of an intent to abandon that status. In the state of the instant record this mere omission to disclose its secured status in the petition does not indicate an intentional relinquishment of the right to that

security, nor is it a neglect to insist at a proper time upon that right. See *Metcalf* v. *Phenix Insurance Co.*, 21 R. I. 307.

The creditors contend also that the court erred in directing payment of the proceeds of security on the ground that the bank, having petitioned for the establishment of the receivership, has elected to pursue a particular remedial procedure. They argue that by moving for payment of proceeds of security, the bank invoked another and inconsistent remedy and is barred from pursuing that remedy by the doctrine of election of remedies. With this we are unable to agree.

We do not perceive that the bank, by moving to recover the proceeds of security, was pursuing a remedy different from or inconsistent with its action in petitioning for the appointment of a receiver. In *Adams* v. *Camden Safe Deposit & Trust Co.*, 121 N.J.L. 389, in speaking of the doctrine of election of remedies, it was said at page 394: "The essence of the doctrine of election of remedies is the conscious choice, with full knowledge of the facts, of one of two or more inconsistent remedies." The court then noted that to make an election of remedies conclusive, the procedure must in fact deal with two inconsistent remedies and that the doctrine will not be applied "to bar concurrent and consistent remedies."

It is our opinion that the bank, in moving for payment of the proceeds of the sale of the real estate, was only pursuing a subsequent phase of the remedial procedure invoked by its petition for the receivership. The bank, in other words, elected to pursue the remedial procedures inherent in a receivership. A receiver is an officer of the court that appointed him, and property entrusted to such a receiver is in the custody of that court to be disposed of only according to its order and in accordance with the priorities of the parties concerned. *Manchester* v. *Manchester*, 94 R. I.

400, 181 A.2d 235; *Williams* v. *Messick*, 177 Md. 605. The acquisition of property by a receiver with respect to which a creditor has a priority for payment does not deprive the creditor of the benefit of such priority. *Winsor* v. *Pilgrim Shoe Machinery Co.*, 42 R. I. 73, 77.

The record of the receivership, so far as it is pertinent to the instant question, reveals that on May 16, 1961 the coreceivers petitioned the superior court for instructions and an order authorizing them to sell respondent's real estate at a price of $75,000 and to convey the same by a receivers' deed. It further appears that on May 17, 1961 the superior court entered a decree giving authority to the receivers to convey the real estate as prayed, directing that the proceeds obtained from such sale were to be impressed with the same lien that the bank had as a mortgagee of the property and that the proceeds of such sale of real estate be deposited in an escrow account. It further appears that on September 18, 1961, on a motion therefor, a decree was entered wherein the conveyance by the coreceivers of the real estate in question was confirmed and ratified.

This state of the record, in our opinion, renders inescapable the conclusion that the bank was not attempting to pursue a remedy inconsistent with its petitioning respondent into receivership. The entire procedure utilized the mechanisms of the receivership, asserting the priority the bank had in the real estate and the lien impressed upon the proceeds of the sale thereof by the court in the decree of May 17, 1961. It is our opinion, in the circumstances, that the procedures under consideration were not inconsistent.

It may be argued that in so concluding we are construing the remedial procedures involved with respect to their consistency with such liberality as to exclude an application of the doctrine of election. It is our view, however, in view of the harsh character of the doctrine, that we should restrict its application to cases clearly within its reason and

spirit and thus avoid injustice and inequity. Many courts have not hesitated to enunciate their intention to avoid carrying the doctrine to unreasonable and illogical extremes. *Adams* v. *Camden Safe Deposit & Trust Co., supra; First National Bank* v. *Flynn,* 190 Minn. 102; *National Transportation Co.* v. *Toquet,* 123 Conn. 468.

This view, which we consider entirely sound, is well stated in *Ricker* v. *Mathews,* 94 N. H. 313. In that case the court, observing that the trend of the decisions is to so limit the doctrine that it will not become an instrument of injustice, said at page 317: "To accomplish this purpose the formal doctrine of election of remedies should be confined to cases where the plaintiff may be unjustly enriched or the defendant has actually been misled by the plaintiff's conduct or the result is otherwise inequitable or res judicata can be applied." *National Lock Co.* v. *Hogland,* 101 F.2d 576; *Metropolitan Life Insurance Co.* v. *Childs Co.,* 230 N. Y. 285.

The bank, by asserting its priority for payment to recover a debt due it, the validity of which is not questioned, is certainly not being unjustly enriched thereby. Nothing in the record warrants a conclusion that the action of the bank in petitioning for a receivership actually misled any of the unsecured creditors. In such circumstances and in the absence of any real repugnancy between the remedial procedures pursued by the bank, it is our opinion that the doctrine of election of remedies is without application here.

The appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

MOTION FOR REARGUMENT.

JULY 12, 1962.

PER CURIAM. After our opinion herein was filed, the unsecured creditors by permission of the court presented a

motion for leave to reargue. The movants contend therein that the court has either overlooked or misconceived the evidence as it relates to the possibility that the bank may be unjustly enriched in that it may receive the full benefits of its security without participating in or sharing the expenses of the administration of the receivership proceedings that were instituted by it. Upon consideration thereof we are of the opinion that the movants' assertions as to the state of the record raise an issue of sufficient importance to warrant further arguments on the narrow issue of the unjust enrichment of the bank in the circumstances stated.

As thus restricted the motion for leave to reargue is granted.

*Tillinghast, Collins & Tanner,* for petitioner.

*Zietz, Sonkin & Radin,* movants for unsecured creditors and amicus curiae.