251 A.2d 397.

EMILY CODERRE *et al. vs.* ZONING BOARD OF REVIEW OF THE CITY OF PAWTUCKET.

MARCH 20, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This is a petition for certiorari which seeks to quash the respondent board's grant of a variance allowing the construction of an ice cream processing plant in a district zoned for residential purposes. We issued the writ and the board has forwarded to us the pertinent records.

In 1966 the Pawtucket Redevelopment Agency designated an area in that city as a site for an urban renewal project. The agency instituted eminent domain proceedings and as a result thereof Palagi Ice Cream Co. was compelled to move from its Water Street address. Accordingly, the Palagi brothers—Peter, Philip and Henry— jointly purchased seven lots of land situated near the inter-

section of Bacon and Thistle Streets as a location for a new building which would house the necessary equipment incidental to the manufacture of ice cream. It appears from the record that Thistle Street is unimproved and undeveloped. Four of the Palagis' lots lie on the northerly side of Thistle Street and the remaining three are situated on the southerly side of the roadway. One lot on each side of Thistle Street runs along Bacon Street for a considerable distance.

We have witnessed two abortive efforts to have this court review the board's past actions taken relative to the subject property. In *Coderre* v. *Zoning Board of Review*, 102 R. I. 327, 230 A.2d 247, we were asked to quash the grant of a variance which would have permitted the Palagi brothers to erect their proposed plant. Our examination of the board's decision disclosed that it failed to contain any factual basis for the conclusions. We therefore remanded the records to the board with a directive that it clarify and complete its decision. The board purported to comply with our order and forwarded us an amended decision. During the time of our opinion and the board's clarification, there occurred a change in the membership of the board. Accordingly, when the new decision was returned to us, we quashed the second decision and recommended that the parties begin anew. See *Coderre* v. *Zoning Board of Review*, 103 R. I. 575, 239 A.2d 729. A new application was filed on March 21, 1968 and duly advertised. The respondent board held a public hearing where it considered the application on April 9, 1968. Although the application sought relief for all seven lots, at the hearing, the Palagi brothers restricted their request to the four lots situated on the northerly side of Thistle Street. The three lots on the southerly side of this way were to remain residential. The proposed building would front on Bacon Street for a distance of 50 feet and extend westerly along Thistle Street

for 100 feet. A week after the hearing, the board filed its decision which granted petitioners' second application. This is the action which is being challenged in the present proceedings.

Several of the petitioners own homes in the area. They appeared at the April 9 hearing and raised objections to the Palagi brothers' application. Testifying for the applicants were Peter Palagi and a duly licensed real estate broker who had considerable experience in the construction and sale of homes in the city of Pawtucket. A summary of the testimony was prepared by the board's secretary and it is part of the record.

Peter Palagi testified that the property in dispute had in past years been a swamp which during the passage of time had been used by many individuals as a dumping place for various and sundry materials including automobile parts, garbage, ledge and stone. The dumping that took place at this location was performed in a most haphazard fashion. No effort was ever made by those using this land to employ any principles of a scientific landfill program.

In his appearance before the board, the applicants' expert witness described at length the various nonresidential buildings and uses found in close proximity to the Palagis' land. He also told of the condition of the soil and related the misfortune he experienced in building homes on land similar to that found on the Palagi parcel. He stated that homes should not be built at this spot. The realtor-contractor spoke of the additional expense that would be involved because of the necessary type of foundation needed to support any dwelling built on the applicants' filled-in-land. This witness also said that mortgage financing would not be made available by lending institutions to assist any home construction in this area. The gentleman concluded his testimony by saying that any erection of homes on the

Palagi property would be a losing proposition because of the commercial and industrial uses found in this area and the expense involved in attempting to build homes on the filled-in-land.

The petitioners presented no expert testimony but quite naturally took issue with the expert's observations.

It is obvious that the board, in giving the Palagi brothers permission to erect their plant on the four lots on the northerly side of Thistle Street, relied on the testimony of the realtor and their knowledge of the Bacon Street area acquired on their inspection trip to this location and set forth in their decision.

Our sole function in this appeal, which challenges the award of a variance by a local zoning board, is to determine whether there is in the record before us any legally competent evidence which shows that a literal application of the provisions of the Pawtucket zoning ordinance has deprived the Palagi brothers of all beneficial use of their property and that the relief afforded them by the respondent board is not contrary to the public interest. As we review the evidence present in the record, we are ever mindful of our oft-repeated rule that ordinarily the credibility of witnesses and weight of the evidence is the sole prerogative of the local board. We can see no reason to depart from this practice as we consider the record of the case at bar.

Ever since the legislature first permitted the various municipalities of this state to enact zoning regulations, this court has consistently recognized that the administration of a city or town ordinance is properly exercised in the first instance by the various individuals in a community who constitute a zoning board of review. Long ago in *Roberge* v. *Zoning Board of Review*, 157 A.304, we declared that members of a board of review are presumed to have a special knowledge of local conditions and needs—matters which are so much a part of their administration of an

ordinance. This court has declared on many occasions that a local board of review when acting on an application for an exception or variance may base its findings upon knowledge it acquired during its inspection of the premises which are the subject of the application pending before the board. Here the board visited and inspected the applicants' land and viewed the surrounding area. Their decision contains a detailed report of its observations, which we cannot ignore.

It is obvious from an examination of the record that industrial and commercial endeavors of various sizes and shape abound in the area in question. Directly across from the proposed location of the applicants' building is a structure which served as the headquarters of a construction company. Stored on the exterior of this property and in full view of everyone are various pieces of heavy-duty construction equipment. Directly to the west of the applicants' four lots is a parcel of land used by the Pawtucket public works department for the outdoor storage of various supplies and equipment such as sewer pipes. To the rear of the city's storage area is McCoy Stadium. This is a large city-owned athletic field where athletic events are conducted both in the daytime and at night. Also found in this area is a machine-manufacturing plant, a trucking company, a sprawling warehouse facility which is owned by a toy manufacturer and a contractor who specializes in the excavation of land and the preparation of building sites. Several of these structures are nonconforming uses.

We have also examined the summary of the testimony given by the applicants' expert. A fair reading of this portion of the record makes it clear that in substance the witness informed the board that due to location factors and soil problems, it was economically prohibitive to build homes on the subject land. This evidence warranted a finding by respondent board that the applicants had indeed suffered a loss of all beneficial use of their property.

The petitioners contend that mere expense incurred when filling in land or the presence of a nonconforming use in a residential area is not enough to constitute a deprivation of all beneficial use of one's property. In support of this proposition, they cite the cases of *D'Ordine & Son* v. *Zoning Board of Review*, 79 R. I. 489, 90 A.2d 416 and *Somyk* v. *Zoning Board of Review*, 99 R. I. 255, 207 A.2d 34. However, a close reading of these cases and other cases cited therein discloses that what we said was such a nonconforming use or extra expense in and by itself does not justify the grant of a variance. Here, however, the applicants are saddled with both these conditions and this combination makes the big difference. See also *School Committee* v. *Zoning Board of Review*, 86 R. I. 131, 133 A.2d 734. It takes little imagination to realize that in these inflationary days of soaring construction costs and high mortgage rates that the erection of homes in the vicinity of Bacon and Thistle Streets is quite speculative to say the least. We will not, therefore, in the circumstances of this case superimpose our judgment upon that of respondent board, particularly since their expertise shows so clearly in this record.

There is, therefore, competent evidence in the record which shows that the applicants were entitled to relief. We must now determine whether the relief afforded them was within the discretion given the board by the provisions of G. L. 1956, §45-24-19. This section permits a zoning board of review to award a variance in the terms of an ordinance "* * * as will not be contrary to the public interest * * * so that the spirit of the ordinance shall be observed and substantial justice done." This is the standard established by the general assembly for the degree of relief to be granted an applicant who has demonstrated an entitlement to a variance.

This court in *Heffernan* v. *Zoning Board of Review*, 50 R. I. 26, 144 A. 674, stated the phrase "contrary to the

public interest" must be given a reasonable interpretation. The ordinance, we said, represents a declaration of public interest and any variance thereof is in some measure contrary thereto. "Contrary to public interest," we declared, should be interpreted to mean what in the judgment of a reasonable man would unduly and in a marked degree conflict with the ordinance provisions. In *Kraemer* v. *Zoning Board of Review,* 98 R. I. 328, 201 A.2d 643, it was pointed out that in awarding a variance, the use granted must be of such a character as will not be violative of the basic zoning objectives.

In our opinion, a determination of the effect of a grant of a variance on the purposes and objectives of a local zoning ordinance shall be made by an appraisal of the effect of the board's action on the neighborhood affected. If there is competent evidence in the record which shows that the variance given will not alter the essential character of the locality, the board's action shall be upheld. If it be otherwise, its decision shall be reversed.

We can see no reason in reiterating the findings made by the board during their inspection of the site of the applicants' plant and the surrounding vicinity. The record shows quite clearly that the erection of applicants' building could not be described as an intrusion of an industrial use into an otherwise solid residential area. Within a short stone's throw of the applicants' property and the petitioners' real estate are several endeavors which are classified as industrial uses under the Pawtucket ordinance. It is obvious that the board's award of the variance will not alter the essential character of the neighborhood which is adjacent to the corner of Bacon and Thistle Streets. The board's finding that the relief given in the instant cause was not contrary to public interest is based on its knowledge acquired during its tour of the locus as set forth in its decision. It is competent evidence and shall not be disturbed by us.

Finally, we find no merit to a contention made in a supplementary brief filed by petitioners. They allege that sometime after this appeal was perfected, the Palagi brothers petitioned the Pawtucket city council to amend the zoning ordinance and change the classification of their seven lots from a residential to manufacturing use. The council granted the petition and petitioners appealed this action to the superior court. On November 1, 1968, a judgment was entered in that court which declared the council's action to be illegal. No appeal was prosecuted to this court.

The petitioners now claim that the Palagi brothers having made a choice of available remedies cannot maintain this appeal. We disagree.

The doctrine of the election of remedies which holds that the pursuit of one remedy will exclude the pursuit of the other applies only in those cases in which the party has two or more remedies which are inconsistent with each other. It has no application to bar the use of remedies which are concurrent and consistent. *Rhode Island Hospital Trust Co.* v. *Rhode Island Covering Co.*, 95 R. I. 30, 182 A.2d 438. The test of inconsistency is whether the two modes of redress are such that the assertion of one remedy of necessity negates or repudiates the other. *Abbadessa* v. *Tegu,* 122 Vt. 345, 173 A.2d 581. We see nothing inconsistent in the position of a person who seeks relief from the restrictions of a zoning ordinance by travelling the two different avenues afforded them by the general assembly. In each instant they believe themselves aggrieved by the city or town council's designation of their property. While the degree of relief granted them by the council may be broader than that offered by a zoning board in each case, in each instance they must show that the municipality's master plan remains inviolate.

Furthermore, in *Rhode Island Hospital Trust Co.* v. *Rhode Island Covering Co., supra,* this court declared that

we would limit the application of this doctrine which we described as being "harsh." Here the legislature has given a landowner or one having an interest in real estate two sperate and distinct remedies. Nowhere can we find any evidence of a legislative intent that recourse to one forum will bar access to the other. In our opinion the applicants were properly before the respondent board and were entitled to be heard by that body. We would also point out that in *Olson* v. *Zoning Board of Review*, 96 R. I. 1, 188 A.2d 367, a contention which is substantially similar to that espoused by the petitioners in this phase of their appeal was considered and rejected.

The petition for certiorari is denied and dismissed and the writ heretofore issued is quashed.

*William J. Burke, Jr.,* for petitioners-appellants.

*Woolley, Blais & Quinn, Henry J. Blais III, Matthew C. Cunningham* of counsel, *Gerald J. Pouliot,* Assistant City Solicitor, for respondent-appellee.