404 A.2d 829.

Dolores E. Silva *vs.* Anthony E. Silva.

AUGUST 14, 1979.

Present: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

KELLEHER, J.  Anthony and Dolores Silva were once husband and wife. On June 26, 1957, Dolores filed a petition in the Superior Court seeking a divorce. Five days later Anthony responded with a petition of his own, and on July 11 a decree was entered in the case involving Dolores' petition, awarding her temporary custody of the couple's minor son, John, on the weekdays and transferring temporary custody to Anthony for the weekends. Dolores was also awarded temporary use of the couple's home and household furnishings

and a weekly child-support payment of $12. John at this time was almost 2 years old.

Later, in 1962, Dolores, believing that her decree had become final, remarried, and she, John, and her new husband moved to Florida. Subsequently, Dolores returned to Rhode Island and to the Family Court. There she filed a cross-petition for divorce in the case in which Anthony was seeking the divorce. Here a "Decree Nisi" was entered on November 13, 1964, nunc pro tunc October 23, 1964. Anthony's petition was denied, Dolores' cross-petition was granted, and the decree contained the following stipulation: "The issue of alimony and support is left open. This court retains jurisdiction over the parties for the purpose of determining an award of same if proper motion therefor is made by Dolores E. Silva." The final decree dissolving the matrimonial bond and also awarding custody of the minor child to Dolores was entered on April 28, 1965.

After a lapse of over 10 years, Dolores was once again before the Family Court. On June 27, 1975, she asked that Anthony be held in contempt for his failure to pay the $12 child-support order called for in the 1957 decree. When the litigants appeared before the trial justice, Dolores had no record of Anthony's payments or nonpayments, and Anthony insisted that he had paid everything up to the time Dolores went south to Florida. He also maintained that he terminated the support payments because Dolores had assured him that, having obtained the divorce, she was then returning to Florida and he could forget about the child support.

In a written rescript, the trial justice characterized Dolores as an individual who was "unworthy of belief," and he ruled that she had failed to sustain her burden of proof. He also ruled that the divorce decrees of 1964 and 1965 superceded the temporary support order and thereby terminated Anthony's obligation to support the child. Dolores then filed her notice of appeal.

A year went by, and Dolores once again wended her way northward to the Family Court. In July 1977 her attorney

filed a motion asking that the court direct the issuance of an execution against Anthony's goods and chattels, and in support thereof an affidavit was offered in which Dolores claimed that Anthony's child-support obligations, including interest, amounted to just over $25,500. This request was denied without prejudice on the basis that her earlier appeal deprived the Family Court of jurisdiction.

Dolores' appeal directs itself to four issues: (1) subject-matter jurisdiction, (2) the effect of the divorce decrees, (3) the burden of proof, and (4) the reviewability of the denial of the motion seeking the execution.

Dolores takes the position that, even though it was she who initiated the contempt proceedings in the Family Court, jurisdiction to hear the petition remained in the Superior Court. To support this contention, she refers us to *State* v. *Mulholland*, 117 R.I. 321, 323, 366 A.2d 153, 154 (1976), in which we ruled that the Superior Court retained jurisdiction to hear certain motor-vehicle offenses which were pending there at a time when the legislation creating the Division for Administrative Adjudication had become effective. We noted in *Mulholland* the absence in the legislation creating the division of a savings clause or some method for transferring cases then pending in the Superior Court to the division. However, in *Fox* v. *Fox*, 115 R.I. 593, 598, 350 A.2d 602, 604 (1976), we pointed out that the 1961 enabling act[1] that created the Family Court specifically provided that once the Family Court was established, all Superior Court domestic-relations matters were to be transferred to the Family Court for adjudication, and the language used in directing the transfer makes clear that the Legislature intended such matters as Dolores' contempt petition to be heard and decided by the Family Court.

Although the second issue appears to be one of first impression in this jurisdiction, apparently as a general rule temporary orders regarding support or alimony payments

---

[1]Public Laws 1961, ch. 73, §20.

terminate with the entry of the interlocutory decree[2] or the rendition of the final decree of divorce.[3] Thus, even though the temporary order was entered in the case involving Dolores' petition, we believe that Anthony's obligation came to an end with the entry in Anthony's case of the 1964 "Decree Nisi." At that point, Anthony was no longer obligated to make the weekly support payments. Under the terms of the "Decree Nisi," Dolores could have, if she wished, sought child support, but she did not. In fact, she could have sought aid even though it was not provided for in the final decree. *Cambra* v. *Cambra*, 114 R.I. 553, 556, 336 A.2d 842, 844 (1975).

Next, Dolores, after citing some cases of questionable relevance, claims that "the burden of proving payment of a judgment is on the person claiming the payment," and from there she goes on to argue that the trial justice erred when he said that she had the burden. Here again, as a general rule, a complainant who seeks to invoke the court's contempt power must make a prima facie showing by introducing proof indicating the fact of the default and the amount due. 2 Nelson, *Divorce and Annulment* §§16.1 at 408-409 and 16.19 at 419 (2d ed. 1961). In line with this authority, this court in *Brown* v. *Brown*, 114 R.I. 117, 119-20, 329 A.2d 200, 201 (1974), indicated that a prima facie case is established by the petitioner's producing the original support order and offering proof of nonpayment, and once the prima facie case is established, the question then becomes whether the respondent's noncompliance was justifiable. This presents a factual issue on which the respondent has the burden of proof. Similar sentiments have been expressed in *Kemmerle* v. *Kemmerle*, 171 Kan. 312, 314, 232 P.2d 220, 221 (1951), and *State ex rel. McKee* v. *McKee*, 237 Ore. 583, 585, 392 P.2d 645, 646

[2]*Van Diest* v. *Van Diest*, 72 Cal. Rptr. 304, 308, 266 Cal. App. 2d 541, 546 (1968); *Wilson* v. *Wilson*, 99 N.J. Super. 427, 429, 240 A.2d 188, 189 (Super. Ct. Ch. Div. 1968).

[3]*Sunshine* v. *Sunshine*, 527 P.2d 908, 909 (Colo. App. 1974); *Chatsworth Lumber Co.* v. *White*, 214 Ga. 798, 799, 107 S.E.2d 827, 828 (1959); *Rickus* v. *Rickus*, 184 Neb. 833, 835, 172 N.W.2d 628, 630 (1969). *See also Rodearmel* v. *Rodearmel*, 173 Conn. 273, 377 A.2d 260, 262 (1977).

(1964). We cannot fault the trial justice for ruling that Dolores carried the burden of proof as far as making an initial showing of contempt.

Dolores' motion serves as a reminder that in this jurisdiction, accrued but unpaid installments of alimony or child support may be collected either by contempt proceedings, or by the issuance of an execution for failure to comply with a decree, or by an action at law as upon a judgment. *Glodis* v. *Glodis*, 115 R.I. 370, 371, 346 A.2d 123, 123 (1975). The trial justice's denial of Dolores' motion was based upon his belief that the contempt appeal had divested the Family Court of jurisdiction to entertain Dolores' motion. Apparently, the trial justice[4] had in mind the oft-cited rule which holds that the transmittal and docketing of the record in this court divests the trial court of the power to act in the case, even in regard to motions pending before it at that time. *Cavanagh* v. *Cavanagh*, 19 R.I. 479, 485, 380 A.2d 964, 968 (1977); *Hattie Carnegie Industries, Inc.* v. *Lopreato*, 114 R.I. 319, 323, 333 A.2d 145, 148 (1975); *Devereaux* v. *McGarry's, Inc.*, 107 R.I. 325, 329, 266 A.2d 908, 910 (1970). However, the trial justice obviously was not aware that at the time he was considering Dolores' motion, the record was still in the Family Court. The denial of Dolores' motion occurred on December 12, 1977, and it was a week later before the record was docketed in this court. Although the "without prejudice" denial ostensibly lacks the requisite finality for appellate review, we believe that the denial was correct, even though the trial justice's reasoning might be faulted. To be exact, the denial should have been absolute rather than without prejudice.

Since the Family Court had jurisdiction to hear Dolores' motion, the next question that comes to mind is whether her motion might be barred because of the election-of-remedies doctrine. The answer is "No," and the negative response derives from this court's previous pronouncements. This doctrine, which holds that the pursuit of one remedy will ex-

---

[4]One Family Court justice considered the contempt petition, and another justice heard the execution motion.

clude the pursuit of another, applies only in those cases in which the parties have two or more inconsistent remedies. There is no bar to the use of concurrent and consistent remedies. Inconsistency arises when the two modes of redress are such that asserting one necessarily negates or repudiates the other. *Coderre* v. *Zoning Board of Review*, 105 R.I. 266, 274, 251 A.2d 397, 402 (1969); *Rhode Island Hospital Trust Co.* v. *Rhode Island Covering Co.*, 95 R.I. 30, 35, 182 A.2d 438, 441 (1962). We see nothing inconsistent here. In this jurisdiction a judgment creditor such as Dolores has a choice of three concurrent and consistent remedies.

Notwithstanding the availability of these different avenues of relief, Dolores' motion for an execution is barred by the doctrine of res judicata. The underlying basis of the doctrine of res judicata, as well as collateral estoppel, is that an issue need, and should, be judicially determined only once. *Matter of McMillan*, 579 F.2d 289, 292 (3d Cir. 1978). A judgment may be given res judicata effect even though that judgment is subject to an appeal. *Armstrong* v. *Armstrong*, 117 R.I. 83, 86, 362 A.2d 147, 149 (1976); *Perez* v. *Pawtucket Redevelopment Agency*, 111 R.I. 327, 337-38, 302 A.2d 785, 791-92 (1973). Applying these principles to Dolores' motion, we find that the denial of her contempt petition obviously bars her from taking a proverbial second bite, in which she would attempt to prove to another Family Court justice that Anthony failed to comply with the 1957 order. This she cannot do.

Dolores' appeal is denied and dismissed, and the case is remitted to the Family Court with direction to delete the words "without prejudice" from the decree denying Dolores' motion for an execution.

*Aram K. Berberian,* for petitioner.

*Michael E. Civittolo, Harris L. Berson,* for respondent.