894 A.2d 1234

MICHAEL COLLINS, PLAINTIFF–APPELLANT, v. UNITED STATES FIDELITY AND GUARANTY COMPANY AKA USF&G INSURANCE, DEFENDANT–RESPONDENT, AND NEW PENN MOTOR EXPRESS INC. AND THE PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY OF NEW JERSEY AKA THE PRUDENTIAL COMMERCIAL INSURANCE COMPANY OF NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued February 7, 2006—Decided April 13, 2006.

Before Judges KESTIN, LEFELT [1] and SELTZER.

---

[1] Judge Lefelt did not participate in oral argument. However, with the consent of all parties, he has joined in this opinion. *R.* 2:13–2(b).

*Richard F. Denes,* argued the cause for appellant.

*Jerald J. Howarth,* argued the cause for respondent United States Fidelity and Guaranty a/k/a USF&G Insurance (*Hahn and Howarth,* attorneys; *Mr. Howarth,* on the brief).

The opinion of the court was delivered by

SELTZER, J.S.C. (temporarily assigned).

This appeal requires us to consider the effect of a settlement with a possible tortfeasor on plaintiff's right to recover from his uninsured motorist carrier when both the possible tortfeasor and the carrier are named defendants in a pending suit. The motion judge initially considering this question believed that the settlement barred continuation of the action against the co-defendant and dismissed the suit against the carrier. We disagree and reverse.

The record on appeal reveals that plaintiff, Michael Collins, was a toll collector on the New Jersey Turnpike on March 7, 2001, when he was injured. Plaintiff's interrogatory answers described the incident as follows:

> I was working as a toll collector on the New Jersey Turnpike. A tractor trailer entered my lane presumably to pay a toll. The tractor trailer stopped and I put my arm out of the booth anticipating payment of the toll. The vehicle then began moving out of my lane without paying the toll and the next thing I felt was my arm being pinned against the frame of the booth door by the trailer. The tractor trailer driver took off from the scene without stopping and without paying the toll.

Plaintiff, without citation to the record, advises us that he obtained a partial license plate of the offending vehicle and that investigation led him to believe the vehicle causing his injury was owned by defendant, New Penn Motor Express Inc. (New Penn). An investigative report completed by plaintiff's "investigating supervisor" also identified New Penn as the owner of the vehicle causing plaintiff's injuries, although it is likely that this information came from plaintiff. In any event, plaintiff instituted a personal injury suit against New Penn.

At the time of the accident, plaintiff was insured by policies issued by Prudential Property and Casualty Insurance Company (Prudential) and by United States Fidelity and Guaranty Company (USF&G). Those policies included "uninsured motorist coverage" providing compensation for injuries caused by (1) a vehicle that either did not have a policy of liability insurance in effect or that had a policy in effect but the issuer of which had disclaimed coverage or professed an inability to pay pursuant to the policy (an "uninsured" vehicle) or (2) a vehicle that could not be identified (a "hit and run" vehicle). *N.J.S.A.* 17:28–1.1(b) and 2(c); *N.J.S.A.* 39:6–78.

█ Because plaintiff was not certain that he was injured by a New Penn vehicle, he also instituted suit against both Prudential and USF&G. Neither carrier sought to arbitrate the claim [2]. The carriers were named to protect against the possibility that New Penn was not the owner of the vehicle involved in the accident. In that case, the vehicle actually involved would, of necessity, be a "hit and run" vehicle and the carriers would be contractually obligated to pay plaintiff's damages. The institution of an action against both a possible tortfeasor and the entity required to pay plaintiff if the putative tortfeasor, in fact, was not involved avoids the possibility of inconsistent verdicts. It is an appropriate mechanism for resolving the issues presented when the identity of the tortfeasor is in question. *See Schaefer v. Strelecki,* 107 *N.J.Super.* 7, 256 *A.*2d 609 (App.Div.1969). Prudential eventually settled the claim against it and is not involved in this appeal.

During discovery, it became reasonably clear that New Penn was not the tortfeasor. Although New Penn appeared likely to

---

[2] The record on appeal does not include the policies, but we assume the policies provided the right to compel arbitration. Although uninsured motorist coverage is subject "to the policy terms, conditions and exclusions approved by the Commissioner of Banking and Insurance, including, but not limited to, unauthorized settlements, ... subrogation and arbitration[,]" *N.J.S.A.* 17:28–1.1d, no party has claimed that any policy provision dictates the result of this controversy.

prevail at trial, it sent plaintiff an offer of judgment, *see R.* 4:58, in the amount of $7,500. Apparently, the offer was motivated by New Penn's desire to extricate itself from the litigation as cheaply as possible. Plaintiff, believing he would be unable to prevail against New Penn at trial, advised USF&G of his intention to accept the offer and requested consent to do so. The letter conveying this information and request made specific reference to *Longworth v. Van Houten,* 223 *N.J.Super.* 174, 538 *A.*2d 414 (App.Div.1988). No consent was provided by USF&G and plaintiff accepted the offer, providing New Penn with a general release.

After that settlement had been finalized, USF&G filed an application for summary judgment and plaintiff cross-moved for partial summary judgment on liability; to fix responsibility for a workers' compensation lien; and a for a computation of the percentage of any award attributable to USF&G. The motion judge, believing our decision in *Kerwien v. Melone,* 288 *N.J.Super.* 268, 672 *A.*2d 235 (App.Div.1996) precluded plaintiff from continuing the action against USF&G after settling with New Penn, granted USF&G's motion and dismissed the complaint. He, therefore, did not reach plaintiff's cross-motion, although he did enter an order denying it. Plaintiff appeals from the dismissal of his complaint and from the denial of his cross-motion for partial summary judgment.

Because this decision was reached on cross-motions for summary judgment, we apply the same standard to resolve the issue as that employed by the motion judge. *Prudential Prop. & Cas. Ins. Co. v. Boylan,* 307 *N.J.Super.* 162, 167, 704 *A.*2d 597 (App. Div) *certif. denied,* 154 *N.J.* 608, 713 *A.*2d 499 (1998). Although we give deference to the judge's factual findings, a consideration not present here, the judge's "interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." *Manalapan Realty, L.P. v. Twp. Comm.,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995).

Before addressing the judge's reliance on *Kerwien,* we begin our analysis by commenting on the procedure employed by

plaintiff in notifying USF&G of his intention to accept New Penn's offer of judgment. That notice was intended to comply with the requirements of *Longworth v. Van Houten, supra,* 223 *N.J.Super.* 174, 538 *A.2d* 414. Although that case may be applicable in some situations involving uninsured motorist (UM) coverage, we believe it is inapplicable here.

*Longworth* resolved the tension that arises when a plaintiff seeks to settle with an underinsured tortfeasor and the injured plaintiff's underinsured motorist (UIM) insurance carrier seeks to preserve its subrogation rights against the tortfeasor. Since a settlement with the tortfeasor will involve a general release, destroying the subrogation rights of the carrier, *Longworth* suggested a procedure, subsequently endorsed in *Rutgers Casualty Ins. Co. v. Vassas,* 139 *N.J.* 163, 174, 652 *A.2d* 162 (1995), that gives the carrier notice of the settlement and an opportunity to preserve its subrogation rights by paying to plaintiff the settlement proposed, in default of which it is deemed to have waived its rights and consented to the settlement.

That procedure, however, applies only when considerations of subrogation are implicated. "Subrogation is a device adopted by equity to compel the ultimate discharge of an obligation by him who in good conscience ought to pay it." *Camden Trust Co. v. Cramer,* 136 *N.J. Eq.* 261, 264, 40 *A.2d* 601 (E. & A.1945). In the UIM context, it is equitable that the underinsured tortfeasor, to the extent assets exist, repay the injured party's insurer the sums paid by it to its insured for injuries caused by the tortfeasor.

In the context of UM coverage, different considerations apply. UM coverage provides compensation from the injured person's own policy for damages sustained from one of two classes of tortfeasors: (a) a tortfeasor whose identity is known but who has no liability insurance, or who has liability insurance but the carrier is either unable to pay damages or has disclaimed the obligation to do so; and (b) a tortfeasor whose identity cannot be ascertained. *N.J.S.A.* 17:28–1.1(b) and 2(c); *N.J.S.A.* 39:6–78.

When injury is caused by a vehicle included in the first class there is no reason why an UM carrier should not be able to subrogate to its insured's rights against the uninsured tortfeasor, just as it would in the UIM context. *See* 24 *Appleman on Insurance Law and Practice* § 149.6 (2nd ed. 2005) ("When an insured settles a claim or obtains a judgment [against his UM carrier], the carrier is generally entitled to assert its subrogation rights and to collect the amounts payable."). When the identity of the tortfeasor is known, that tortfeasor, in good conscience, ought bear ultimate responsibility for the damages caused. Since the UM carrier pays those expenses initially, it has the right to subrogate to its insured's claim against the known tortfeasor. When the insured seeks to settle against a known, but uninsured, culpable party, with the attendant requirement of providing a general release, the same considerations that drove the solution imposed in *Longworth* apply.

The situation is quite different when, as here, the person offering the settlement may not have been involved in the accident at all, so that the actual tortfeasor may belong to the second class. In that case, the UM carrier cannot have any subrogation rights against the party who *may* have been involved in the accident. The situation presented in this litigation is a perfect example. New Penn has a liability policy and will be liable to plaintiff if it owned the vehicle doing him injury. In that case, USF&G will not be contractually liable to plaintiff to pay for injuries caused by an unidentified or uninsured vehicle because New Penn is both identified and insured. USF&G, having no obligation to pay plaintiff under these circumstances, cannot complain if plaintiff accepts payment from the responsible party.

On the other hand, if New Penn caused no injury to plaintiff, it cannot be liable in any way as a result of the accident. It would not be a responsible party and USF&G, once having discharged its contractual obligation to pay for damages resulting from the actions of a "hit and run" vehicle, could not pursue New Penn, because New Penn is not a "hit and run" vehicle. Nor, we think,

can USF&G complain if New Penn, for reasons of its own, chooses to pay to plaintiff some sums, although not legally obligated to do so.

It follows that, without regard to whether New Penn was involved in the accident, USF&G had no subrogation rights that would be destroyed by a release given to New Penn by plaintiff. USF&G had no rights or claims against New Penn at all and its consent to the settlement was not necessary. The situations in which an UM carrier has any rights against the tortfeasor, of necessity, must involve a known tortfeasor who has no insurance because there can be no subrogation against an unknown tortfeasor.

■ We turn then to plaintiff's right to settle with New Penn without ceding any claim against USF&G. Our analysis is informed by the same considerations we have just discussed and is grounded in the recognition that "[s]ettlement of litigation ranks high in our public policy." *Nolan ex rel. Nolan v. Lee Ho*, 120 *N.J.* 465, 472, 577 *A.*2d 143 (1990) (quoting *Jannarone v. W.T. Co.*, 65 *N.J.Super.* 472, 476, 168 *A.*2d 72 (App.Div.), *certif. denied*, 35 *N.J.* 61, 171 *A.*2d 147 (1961)). Given our determination that USF&G is unaffected by plaintiff's settlement with New Penn, we cannot, in light of these principles, conclude the settlement destroys plaintiff's right against USF&G.

Indeed, New Penn must consider a contrary result to be unfair in the extreme. In order to insure a complete recovery, plaintiff would be required to prosecute its complaint against New Penn (and USF&G) to judgment. New Penn would thus be deprived of the opportunity to evaluate its position and reach a voluntary compromise with plaintiff, avoiding the expense and uncertainties of a trial. The effect upon plaintiff is equally unfair. The requirement to litigate to a conclusion deprives plaintiff of the ability to fashion a trial strategy in which only one defendant is presented to the jury. Plaintiff can pursue that strategy only by dismissing his action against New Penn, without compensation,

and incurring the risk that the dismissed defendant will be found responsible.

Compelling plaintiff to litigate against both defendants to judgment may also unfairly expose him to sanctions under certain circumstances. Plaintiff here alleges that the offer of judgment was accepted, in part, out of fear that a refusal of the offer of judgment might result in adverse consequences if New Penn prevailed at trial. In this case, that concern is illusory because the damages were likely to exceed the offer by New Penn and no sanctions would result if plaintiff was unsuccessful against New Penn. See *R.* 4:58-3 ("No allowances shall be granted ... if ... a no cause verdict is returned[.]").

However, we can imagine a situation where a settlement would bar further action against the insurer, in which a possible tortfeasor offers sufficient sums so that a finding against that tortfeasor in a lesser sum might result in sanctions. In that case, a plaintiff would be required to elect between (a) refusing the offer and chancing the imposition of sanctions and (b) accepting the offer and foregoing any recovery against the remaining defendant.

Putting a plaintiff to that choice simply serves no legitimate purpose especially when, as in this case, the settlement with New Penn does not deprive USF&G of its opportunity, at trial, to demonstrate that the injuries were caused by an identified insured party (in which event, of course, it would not be contractually obligated to plaintiff). Nor are we able to discern any contrary policy to be served by compelling a plaintiff to litigate to judgment in this situation and none has been suggested to us. We allow plaintiffs to accept a settlement from one of two or more alleged joint tortfeasors without compelling a dismissal of the others even though the settling party denies any responsibility for the accident or injury. *See Breen v. Peck,* 28 *N.J.* 351, 364–65, 146 *A.2d 665* (1958). We can find no substantive difference between that situation and this.

USF&G characterizes the acceptance of the settlement as a recognition that New Penn was the responsible party, thus pre-

cluding a claim under the UM policy. There was, however, no admission of liability. The settlement cannot be considered any more a recognition of New Penn as the responsible party than can plaintiff's settlement with Prudential be considered a recognition that the tortfeasor was a "hit and run" vehicle. Both settlements were simply compromises of outstanding claims.

■ Finally, we do not believe the acceptance of a settlement with New Penn should be considered an election so as to bar a claim against USF&G. The doctrine of election of remedies is recognized in New Jersey. It has, however, been "characterized 'a harsh and now largely obsolete rule' and one 'to be strictly confined within its reason and spirit.'" *Schrage v. Liebstein,* 16 *N.J.Super.* 384, 389, 84 *A.2d* 750 (App.Div.1951) (quoting *Adams v. Camden Safe Deposit & Trust Co.,* 121 *N.J.L.* 389, 397, 2 *A.2d* 361 (Sup.Ct.1938)), *certif. denied,* 8 *N.J.* 431, 86 *A.2d* 145 (1952). Accepting money from one of two defendants does not bar an argument that the settling defendant did not, in fact, bear any responsibility for plaintiff's injury. To the extent the doctrine requires a choice of remedies, the dismissal of New Penn constitutes, if anything, a decision to pursue USF&G.

We recognize that there are numerous cases holding that a settlement with an uninsured tortfeasor will bar a claim against an UM carrier [3]. So far as we can determine, however, those cases fall into one of three classes, none of which includes the situation presented here. The first involves the destruction of subrogation rights by a settlement with a known, but uninsured tortfeasor. *Campbell v. Lion Ins. Co.,* 311 *N.J.Super.* 498, 710 *A.2d* 576 (App.Div.1998) represents that fact pattern, although it did not analyze the issue. As we have seen, plaintiff's settlement with New Penn did not adversely affect USF&G. The second involves

---

[3] For a collection of cases discussing the effect of a settlement with an "uninsured motorist" on the right to collect under an UM policy, *see* Wanda Ellen Wakefield, Annotation, *Validity, Construction, And Effect Of "Consent To Sue" Clauses In Uninsured Motorist Endorsement Of Automobile Insurance Policy,* 24 *A.L.R.4th* 1024 (1983).

what has been termed an election of remedies. We have explained why we believe this doctrine is not applicable generally or in this particular case. The third is exemplified by *Kerwien v. Melone, supra,* 288 *N.J.Super.* 268, 672 *A.*2d 235, upon which USF&G relies and upon which the judge rested his decision.

We believe that reliance on *Kerwien* is misplaced because that case involved an entirely different situation. There plaintiff filed suit against the owner of what he alleged to be a "hit and run" vehicle. There, as here, if the defendant's vehicle had been involved in the accident, Kerwien would not have been entitled to payment under his UM policy. Although Kerwien did not sue his UM carrier, the carrier intervened in the action. Unlike our situation, however, no affirmative claim was advanced by Kerwien against the carrier. Instead, the case against the purported "hit and run" vehicle was settled and the action dismissed. Kerwien then sought to compel arbitration of his UM claim and the insurer sought an order, in the dismissed action, prohibiting Kerwien from pursuing arbitration. We affirmed the trial court's refusal to allow Kerwien to proceed. We reasoned that:

> Here, the issue of whether the vehicle's identity could be ascertained was disputed, thereby requiring adjudication. Plaintiff chose his forum to resolve the issue when he filed his civil action alleging the Melone automobile to be the "hit and run" vehicle. He, however, elected to settle rather than to exercise his right to proceed to trial and obtain a determination of the issue. We conclude that under the circumstances presented, he should not now be permitted to choose a second forum to present his claim. All of the parties to the controversy were present in the civil action and the issue could have been resolved at one time if plaintiff desired a formal determination.
>
> [*Id.* at 277, 672 *A.*2d 235.]

The motion judge apparently believed this language compelled plaintiff to litigate his claims against both USF&G and New Penn to a conclusion. He explained:

> Okay. I think the law is extremely clear on this. *Kerwien* is the leading case, and I've had several cases in front of me with the same issue, and those attorneys went all the way to trial, because once you name a tortfeasor, and have evidence against a tortfeasor you have to pursue that and there has to be a determination that they are not, in order to get a—a UM Claim available. And I think, as I said, *Kerwien v. Melone* is the law, and as such I must grant the Motion by the Defendant for dismissal of the case.

We believe the judge's interpretation is too broad. We take the *Kerwien* fact pattern to typify those cases in which a plaintiff seeks to pursue an inconsistent remedy from one defendant in a second forum after having previously accepted a settlement from another defendant in another forum. We understand the *Kerwien* language to do no more than stress a requirement that plaintiff seek to resolve the issue of responsibility as to all who might be liable in one forum.[4] We do not take it to prohibit a settlement with one of the parties to the litigation at the cost of foregoing the claim against the remaining defendant. Here, plaintiff has joined all parties who might be liable to him in one action. We do not understand *Kerwien* to require anything more.

We simply see no reason to require a plaintiff, after joining all possible defendants, to litigate to judgment against all of them. Neither case law nor sound policy requires such a result. Because plaintiff's actions did not bar his pursuit of his UM carrier, the dismissal against USF&G must be reversed and the matter remanded for further proceedings.

In the absence of a lower court consideration of the issues raised, we decline to entertain plaintiff's appeal from the denial of his motion for partial summary judgment, rendered interlocutory by our decision.

Reversed and remanded.

---

[4] *Kerwien* was decided at a time when our entire controversy doctrine compelled both claim and party joinder. The doctrine was modified in 1998 by a change in *R.* 4:30A to eliminate the mandatory joinder of all parties. *See* Pressler, *Current N.J. Court Rules,* comment 1 on *R.* 4:30A (2006).