DECISION
This matter is before the Court on the appeal of The Plum Beach Club (the "Club" or the "Appellant") from a decision of the North Kingstown Zoning Board of Review ("Zoning Board" or "Board"). On July 9, 2007, Itamara Partners sought a special use permit and a variance from the Board for a single-family home without the required frontage on a public road improved to the Town's standards. The Board's decision issued January 9, 2009, and amended May 28, 2009, granted Itamara Partners a special use permit and a variance to construct a single-family home. The Club maintains the Board's decision is clearly erroneous in view of the reliable, probative, and substantial evidence contained in the record. Appellant filed the instant, timely, appeal to this Court on January 6, 2009. Jurisdiction in this Court is pursuant to G.L. 1956 § 45-24-69. For the reasons set forth herein, this Court affirms the Board's decision.
 I Facts and Travel
Itamara Partners owns Lot 71, Plat 41 (the "Property") which is a legal nonconforming waterfront lot in the Town of North Kingstown (the "Town") and fronts Plum Beach Road. The Property is in a Neighborhood Residential (R40) Zoning District, which requires 180 feet of frontage on a public road to build. In this case, the Property has 264 feet of frontage on Plum *Page 2 
Beach Road, which is recognized by the Town as a public road. However, the portion of Plum Beach Road that fronts the Property is unimproved, i.e. not paved, and not part of the Town's road system for maintenance purposes. After discussion between Itamara Partners and the Town, the parties determined a special use permit was required to build a single-amily home on the property, because the Property does not have the required frontage on a public road improved to the Town's standards.[1] Additionally, Itamara Partners also requested a variance for the septic system proposed for the Property.
The Club owns Lots 68 69, Plat 41, and are abutters of record of the Property to the South. Plum Beach Road provides ingress and egress to the Club's property, and the Club has improved the road with a driveway and a gravel parking lot. Portions of the parking lot created by the Club are on the Plum Beach Road right of way. Further, the gravel driveway proposed by Itamara Partners passes through the Club's parking lot.
On March 25, 2008, Itamara Partners' request for a special use permit and a variance first came before the Board.[2] At the proceeding the Board heard testimony and received evidence. At the hearing on March 25, 2008, counsel for Itamara Partners objected to the necessity of a special use permit for a buildable lot on an unpaved road. The Town Solicitor disagreed with counsel's assertions and stated a special use permit was required. However, due to time constraints, the Board continued the application to June 24, 2008. Itamara Partners' application was further continued at the June 24, September 23, and October 14, 2008 meetings, until it was *Page 3 
heard on November 25, 2008.
On November 25, 2008, the Board once again heard testimony and received evidence. At the hearing counsel for Itamara Partners testified he had spoken with the Town Engineer, DiPrete Engineering, and the Fire Marshall, and had reached an agreement for construction of the driveway and fire vehicle access. Counsel testified a gravel driveway passing through the Club's parking lot with access to the Property would be created. At the meeting counsel stressed the essence of the application was based on the fact that the Property has 264 feet of frontage on a platted street. He stressed the only reason the Board had to consider the special use permit was because portions of Plum Beach Road were not improved to Town standards. According to counsel, half of the Club's parking lot was located in the Plum Beach Road right-of-way. Further, Itamara Partners' counsel testified that he understood the development of a single-family home "upsets the status quo." He also testified the project presented no "threat to the drinking water supply, no excessive noise, glair, or air pollution. Sewage and drainage would be handled adequately." Itamara Partners' counsel also stated that simply because the Club is using portions of Plum Beach Road as a parking lot does "not make it their own."
Eric Prive ("Prive"), an engineer with DiPrete Engineering also testified about the specifics of the proposed driveway. Prive testified the driveway would be 16 feet and be a standard cul de sac. Prive further testified how a fire vehicle housed at the nearest fire house could enter the driveway and turn around. In addition, Prive also testified that because of the closeness to the water, the project also needed the consent of the Coastal Resources Management Corporation ("CRMC"). According to Prive, the materials for the proposed driveway met the Rhode Island Department of Transportation's standards.
Michael Morgan ("Morgan"), an abutter of the Property, testified that the development of *Page 4 
the property would adversely affect the adjoining property owners. Specifically, he believed the creation of a road that ran through his front yard would adversely effect the value of his property. Additionally, Morgan questioned whether or not Plum Beach Road was a public road. Further, Morgan was concerned about the effect the development might have on the drainage of the area, and that the Board was not adequately considering his testimony as a "fact witness."
Spencer Field ("Field") testified that the proposed driveway runs through an area where young children play. Field testified these young children would be in danger if the special use permit was granted. Additionally, Field also testified that on warm summer days the Club's parking lot was packed with cars. He also testified that he believed it would be difficult for large vehicles to navigate the proposed driveway.
Coleman Wholean ("Wholean") also testified that the proposed driveway would cut the Club's parking lot in half. Additionally, Wholean stated that large trucks servicing the dumpster in the Club's parking lot had become stuck on several occasions. According to Wholean, a backhoe is used at the beginning of the "Club season" to grade Plum Beach Road.
After consideration, the Board granted Itamara Partners' request for a special use permit and variance in its decision on January 9, 2009, without any findings of fact. However, after this Court remanded the case to the Board for the limited purpose of issuing findings of fact, the Board's amended decision stated the following:
 1. The applicant's lot, Plat 41, Lot 71, is in a Neighborhood Residential (R40) Zoning District which requires 180' frontage on a public road.
 2. The applicant's lot has 264' of frontage on Plum Beach Road which is a "public road" (as per the letter from the Town Solicitor and by agreement of the parties) but which has not been improved to town standards.
 3. Applicant requires a special use permit since Lot 71 does not have the required frontage on a public road improved to town standards. *Page 5 
 4. The proposed 16' gravel driveway shall be maintained by the applicant and provides adequate access to the property.
 5. The applicant requires a 90' variance from the requirement of Sec. 21-326 that the septic system be set back 150' from the line of mean high tide.
 6. The proposed AdvanTex ISDS treatment system has been approved by DEM. The proposed septic system is located as far away as possible from the coastal wetland feature.
 7. The ISDS location has been determined by perk tests and soil test for the best placement of the leach field based on the DiPrete Engineering report, as well as DEM's approval of the septic system and CRMC has given a preliminary determination.
 The Zoning Board of Review hereby grants the above-described relief for construction of a single family home with homeowner-maintained access on the paper street portion of Plum Beach Road.
On January 6, 2009, the Club filed this appeal claiming the Board's decision is clearly erroneous in view of the reliable, probative, and substantial evidence contained in the record.
 II Standard of Review
Rhode Island General Laws 1956 § 45-24-69 provides this Court with the specific authority to review decisions of town zoning boards. Under § 45-24-69(d), this Court has the power to affirm, reverse or remand a zoning board decision. In conducting its review, "[t]he court shall not substitute its judgment for that of the zoning board . . . as to the weight of the evidence on questions of fact." Section 45-24-69(d). This Court may reverse or modify the zoning board's decision only "if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and *Page 6 
substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Id.
Judicial review of administrative action, including zoning decisions, is "essentially an appellate proceeding." Notre DameCemetery v. Rhode Island State Labor Relations Bd.,118 R.I. 336, 339, 373 A.2d 1194, 1196 (1977); seealso Mauricio v. Zoning Bd. of Review of the City ofPawtucket, 590 A.2d 879, 880 (R.I. 1991).
As to this Court's review of a zoning board's factual findings, the Superior Court "lacks [the] authority to weigh the evidence, to pass upon the credibility of witnesses, or to substitute [its] findings of fact for those made at the administrative level."Restivo v. Lynch, 707 A.2d 663, 665 (R.I. 1998) (quotingLett v. Caromile, 510 A.2d 958, 960 (R.I. 1986)). Rather, the trial justice "must examine the entire record to determine whether `substantial' evidence exists to support the board's findings."DeStefano v. Zoning Bd. of Review of Warwick,122 R.I. 241, 245, 405 A.2d 1167, 1170 (1979). "Substantial evidence is relevant evidence that a reasonable person would accept as adequate to support the board's conclusion and amounts to `more than a scintilla but less than a preponderance.'" Lischio v. ZoningBd. of Review of the Town of North Kingstown,818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. GeorgeSherman Sand and Gravel Co., Inc.,424 A.2d 646, 647 (R.I. 1981)). In short, a reviewing court may not substitute its judgment for that of the board's if it "`can conscientiously find that the board's decision was supported by substantial evidence in the whole record.'" Mill RealtyAssocs. v. Crowe, 841 A.2d 668, 672 (R.I. 2004) (quotingApostolou v. Genovesi,120 R.I. 501, 509, 388 A.2d 821, 825 (1978)). *Page 7 
 III Analysis A No Findings of Fact
The Club argues the Board's decision is arbitrary, capricious and characterized by an abuse of discretion because the Board's first decision failed to make any findings of fact. The January 9, 2009, decision by the Board, which granted Itamara Partners relief states, "[t]he above stated relief has been granted by the board in accordance with Section 21-13 Zoning Board of Review Procedures" and does not list any findings of fact.
Pursuant to G.L. 1956 § 45-24-61 "[t]he zoning board of review shall include in its decision all findings of fact and conditions" . . . which justify a board's decision. The Rhode Island Supreme Court has consistently held, "a zoning board of review is required to make findings of fact and conclusions of law in support of its decisions in order that such decisions may be susceptible of judicial review." Cranston Print Works Co. v. City ofCranston, 684 A.2d 689, 691 (R.I. 1996) (quoting Thorpe v.Zoning Bd. of Review of North Kingstown,492 A.2d 1236-37 (R.I. 1985)); see also Sciacca v.Caruso, 769 A.2d 578, 585 (R.I. 2001); Irish P'ship v.Rommel, 518 A.2d 356, 358 (R.I. 1986).
Here, the Board's January 9, 2009, decision only states Itamara Partners met its burden and cites the relevant ordinance codes. However, on May 27, 2009, this Court issued an Order remanding the case to the Board for the limited purpose of incorporating the findings of fact upon which the Board based its decision. Subsequently, on May 28, 2009, the Board issued its amended decision which incorporated the findings of fact enumerated above. As a result, the Club's argument the Board's decision is devoid of any findings of fact is moot. *Page 8 
 B Special Use Permit and Variance
Next, the Club asserts the Board's decision is clearly erroneous in view of the reliable, probative and substantial evidence in the record, because Itamara Partners failed to meet its burden of proof for a variance. Specifically, the Club asserts Itamara Partners did not present any evidence that the hardship it would suffer amounted to more than a mere inconvenience, or that the granting of its request would not alter the general character of the surrounding area. Further, the Club contends it presented substantial evidence that established the proposed driveway would significantly alter the surrounding area. Conversely, Itamara Partners argues it did not need a variance for the septic system because it was located at least 150 feet from the line of mean high tide, which rendered any vote on the variance moot. Additionally, Itamara Partners alleges the driveway required a special use permit, not a variance. According to Itamara Partners, the showing of a hardship is not a requirement for a special use permit which has different elements than a variance.
The Club's reliance on the need for Itamara Partners to show the requirements of a variance is misplaced. Initially, Itamara Partners sought a variance for the septic system because the Planning Department contended that any septic system had to be 150 feet from a "coastal feature." However, the Ordinance from which a variance was requested states:
Sec. 21.326. Septic system setback.
 (a). Except as provided in subsections (b) and (c) of this section nopart of a subsurface wastewater disposal system or other facility designed to leach liquid wastes into the soil shall be located within 150 feet of any river, stream, surface water body (including a seasonal surface water body), coastal or freshwater wetland, or within 150 feet of the line of the mean high tide of any tidal water body.
After reconsideration, the Town Solicitor and the Planning Department agreed the septic system *Page 9 
was 150 feet from the mean high tide mark. Thus, the Board's vote granting the variance for the septic system was moot. Moreover, the Club did not fully brief the Board's decision to grant a variance for the septic system as a ground for reversal. Almost all of the Club's arguments are addressed to how the driveway would alter the character of the surrounding area, and why denial of the driveway would not present any hardship. The Club's only argument addressed to the septic system concerns one witness's testimony regarding a stream of running water. After quoting the "Septic system setback," the Club states, "[a]ccordingly, [the witness'] testimony that there was a running stream over which the access [the driveway] would be built was not only competent, but relevant to the adjudication of the application." As such, the Club's argument actually addresses the proposed driveway and not the septic system. Moreover, the Club's argument fails to assert exactly where or how this alleged stream violates the "Septic system setback ordinance," or why the septic system would alter the surrounding area. "It is well established that a mere passing reference to an argument is insufficient to merit appellate review."DeAngelis, 923 A.2d 1274, 1282 n. 11; see alsoWilkinson, 788 A.2d at 1131 n. 1 ("Simply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue."). As a result, any argument about the variance request for the septic system is waived.
Further, although the Club's argument focuses on roadway and access issues regarding the driveway, the Club's memorandum fails to address how any of the cited testimony relates to a special use permit. Indeed, the portion of the Club's brief addressed to why Itamara Partners failed to meet its burden of proof is devoid of any reference to a special use permit. As such, the argument put forth by the Club is that Itamara Partners' application for the driveway failed to *Page 10 
meet the standards for a variance when in fact Itamara Partners requested a special use permit for the driveway.[3] Moreover, the Club's brief does not even include a cite to the applicable section of the Ordinance for the issuance of special use permits. The Ordinance provides:
 Sec. 21-15. Additional procedures for special use permits and special permits.
 (a) In granting a special use permit or special permit under this chapter, the zoning board of review shall require that evidence to the satisfaction of the following standards be entered into the record of the proceedings:
 (1) The requested special use permit will not alter the general character of the surrounding area or impair the intent or purpose of this chapter or the comprehensive plan upon which this chapter is based.
 (2) The special use permit is reasonably necessary to serve the public convenience and welfare.
 (3) The granting of a special use permit will not pose a threat to the drinking water supply.
 (4) The use will not disrupt the neighborhood or the privacy of abutting landowners by excessive noise, light, glare or air pollutants.
 (5) Sewage and waste disposal into the ground and the surface water drainage from the proposed use will be adequately handled on site.
 (6) The traffic generated by the proposed use will not cause undue congestion or introduce a traffic hazard to the circulation pattern of the area.
 (7) Accessory signs, off-street parking and loading area and outdoor lighting are designed and located in a manner which complements the character of the neighborhood.
 (8) In addition to the criteria in subsections (1) through (7) of this section, in the case of a special permit, the board shall require evidence that the requested use will have a lesser undesirable *Page 11 
impact upon the surrounding area than the preceding nonconforming use.
In its brief, the Club fails to state which provisions of § 21-15(a) the Board failed to adequately address when it issued the special use permit. Thus, this Court is left without any direction as to which element of § 21-15(a) the Board failed to adequately assess. This Court will not speculate as to why the action of the Board should be overturned. As a result, because the Club failed to brief why Itamara Partners' request for a special use permit for the driveway should not have been granted the argument is waived. See S. Ct. R. App. P. 16(a) ("Errors not claimed, questions not raised and points not made [in a party's brief] ordinarily will be treated as waived and not considered by the court."); see also Roe v. Gelineau,794 A.2d 476, 482 n. 6 (R.I. 2002) (noting "[i]ssues that the appellant fails to brief are waived on appeal"). However, the Court notes that after a review of the record, this Court is satisfied Itamara Partners met the standards for a special use permit.
 C Ownership of Plum Beach Road
The Club also asserts the Board acted beyond its statutory authority when it granted Itamara Partners' request for a variance and a special use permit. Specifically, the Club argues the Board's decision improperly determined ownership of the roadway. According to the Club, for several months prior to the hearing on Itamara Partners' application, the Club exchanged correspondence with the Town Solicitor. In the correspondence, the Club asserts the Town may have abandoned the roadway which would trigger reversionary interests. Conversely, Itamara Partners argues the Club never presented any evidence that the unbuilt portion of Plum Beach Road "is anything other than a platted but unbuilt roadway providing legal access from the end of the paved portion of Plum Beach Road to Lot 71." Further, Itamara Partners argues the Club *Page 12 
failed to object on a number of occasions when members of the Board stated the parties were in agreement that the roadway was owned by the Town.
First, the Club suggests the testimony of Morgan supports its position that a legitimate dispute over ownership of the road existed. Morgan testified the Town was given the road in 1913, but that the Town never took possession of the road. According to Morgan, because the Town never took possession of the road, the land reverted back to the original owners. Moreover, Morgan stated a decision was made in the early 1980's that Plum Beach Road was not a right-of-way. However, as counsel for Itamara Partners correctly pointed out at the hearing, Morgan is not a lawyer or engineer. Additionally, no attempt was made to qualify Morgan as an expert in any field that would be helpful in determining ownership of the roadway. Further, Morgan did not present evidence through either maps, deeds, surveys, or any other documents to support the assertions he was making. Bold assertions by a lay witness are insufficient to create a legitimate controversy regarding ownership of the roadway. See Salve Regina College v. Zoning Bd. ofReview of the City of Newport, 594 A.2d 878, 880-83 (R.I. 1991) (noting that lay judgments of neighboring property owners should be accorded little probative force in a zoning board's review of a special exception application).
Next, the Club states, "[c]ounsel for the Plum Beach Club raised several different ownership possibilities to the Zoning Board in an effort to highlight the underlying unresolved issue of ownership of the access." After reviewing the record submitted by the parties, the Court is unable to discern any statement by the Club's counsel that directly contradicts both the Town's and Itamara Partners' claim that Plum Beach Road is owned by the Town.[4] Indeed, the record reflects that in speaking about the roadway, the Club's counsel stated, "it is a paper road with access to the shore line. [the Club's counsel] said that he considers it an extension of Plum *Page 13 
Beach Road." Also, the Club relies heavily on a letter submitted to the Town Solicitor by the Club to demonstrate a legitimate dispute over ownership existed. However, in the letter to the Town Solicitor, the Club's counsel specifically states, "[t]his deed dated December 6, 1913 was recorded in Deed Book 47 at Page 404 andclearly establishes that the Town of North Kingstownpresently owns Plum Beach Road from Boston Neck Road to the shores of Narragansett Bay." (emphasis added). Although the letter continues and speculates "that the Town may have abandoned the road due to failure to develop it and obtain the necessary Seaview Railroad grade crossing," the Club presented no evidence of abandonment at the hearing.
The Court also finds it instructive that on a number of occasions members of the Board made statements about Plum Beach Road to which the Club's counsel did not object. At one point counsel for Itamara Partners stated "[the letter to the Town Solicitor] referred to by [the Club's counsel] clearly establishes that the Town owns Plum Beach Road" and the Club's counsel did not object. Also during the hearing, a member of the Board said "that both [the Club's counsel] and [Itamara Partners' counsel] state that it is a Town road" and the Club's counsel did not object. Later in the hearing the record reflects another member of the Board stated, "this is a Town road, and that the attorneys agree that this is a Town road." Again, counsel for the Club did not object to these statements. Thus, based on the foregoing, this Court is satisfied the Board did not decide the issue of ownership of the roadway, but merely accepted the uncontested fact the roadway belonged to the Town.
 D Witness Testimony
The Club further contends the Board committed an error of law when it did not consider the fact testimony of an adjacent property owner as a lay witness. According to the Club, *Page 14 
"Morgan's testimony that there was a running stream over which the access would be built was not only competent, but releveant to the adjudication of the application." Addittionally, the Club asserts, "the Zoning Board's failure to consider the competent evidence of a witness was arbitrary and an abuse of discretion and warrants reversal by this court." Conversely, Itamara Partners argues Morgan's testimony was not probative to the issues before the Board, and that no attempt was made to qualify him as an expert. Further, Itamara Partners argues the Board was under no obligation to accept the testimony of a "fact witness." Additionally, Itamara Partners asserts the Board's decision "to accept the testimony of the Applicant's professionals as well as the review and approvals of CRMC and DEM over that of Dr. Morgan hardly could be classified as `arbitrary and an abuse of discretion.'"
Under Rhode Island law, "the credibility of witnesses and weight of the evidence is the sole prerogative of the local board."Coderre v. Zoning Bd. of Review of City of Pawtucket,105 R.I. 266, 270, 251 A.2d 397, 400 (1969). Here, as previously outlined above, no attempt was ever made by either party to qualify Morgan as an expert witness. Even assuming Morgan's testimony was probative regarding the special use permit and a variance, the Board was under no obligation to accept it in light of the countervailing testimony provided to the Board. Bellevue Shopping Ctr. Ass'n v.Chase, 574 A.2d 760, 764 (R.I. 1990) (noting the zoning board is "vested with discretion to accept or reject the evidence presented). Therefore, the Court is satisfied the Board did not abuse its discretion when it accepted the testimony of Itamara Partners' engineers and the approvals of CRMC and DEM over Morgan's testimony.
 IV Conclusion
Based on the foregoing, the decision of the Board granting Itamara Partners' request for a *Page 15 
variance and a special use permit is affirmed. After a review of the evidence, the Court finds the Board's decision is supported by the evidence in the record, not in violation of law, contrary to the Ordinance, or an abuse of discretion.
Counsel for Itamara Partners shall submit an appropriate order for entry in accordance with this Decision within ten (10) days of the date of entry of this Decision.
[1] The North Kingstown Zoning Ordinance (the "Ordinance") does not define the term "public road," or state whether the required frontage needs to be on an "improved" public road. Initially, Itamara Partners contested the need for a special use permit. However, after receiving a letter from the Town's Solicitor, which stated "I believe that it is implicit in the ordinance that the necessary lot frontage must be on a road improved to town standards," Itamara Partners applied for the special use permit. Further, Itamara Partners did not brief the issue of whether a special use permit was required under the Ordinance; as a result, the argument is waived. See DeAngelis v, DeAngelis,923 A.2d 1274, 1282 n. 11 (R.I. 2007); see alsoWilkinson v. State Crime Laboratory Comm'n,788 A.2d 1129, 1131 n. 1 (R.I. 2002).
[2] The Court notes the Appellant did not provide the Court with a transcript transcribed by a court reporter.
[3] The Court notes that no assertion is made by the Club that the driveway proposed by Itamara Partners requires a variance.
[4] Again, the Court notes it was not provided with a record of the proceedings transcribed by a court reporter.